



**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
(San Antonio Division)**

UNITED STATES OF AMERICA,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston,

       Plaintiffs and Co-Relators,

STATE OF CONNECTICUT,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston, and

STATE OF GEORGIA,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston, and

STATE OF INDIANA,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston, and

STATE OF MASSACHUSETTS,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston, and

STATE OF NEW MEXICO,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston, and

STATE OF OKLAHOMA,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston, and

STATE OF TEXAS,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston, and

STATE OF VIRGINIA,
*ex rel.* Loren D. Alves, DDS,
Philip M. Lin, DMD, and Nicole Winston,

v.

DCDR, LLC,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. _____

**JURY TRIAL DEMAND**

**Filed in Camera and Under Seal
Pursuant to Under Seal Pursuant to 31
U.S.C. §3730(B)(2)**

**Do not enter on PACER/ECF
Do not serve Defendants
Do not place in Press Box**

S A 1 3 C A 0 7 6 0   **H**

DALE MAYFIELD, DDS,

TU M. TRAN, DDS, and

KS2 TX, PC D/B/A KOOL SMILES, and
DENTISTRY OF BROWNSVILLE, PC, D/B/A
KOOL SMILES, et al.,

       Defendants

## ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §§ 3729 *et seq.*, AND VARIOUS STATE FALSE CLAIMS ACTS AND DEMAND FOR JURY TRIAL

TO THE HONORABLE COURT:

       This is an action for the United States of America and the States of Connecticut, Georgia, Indiana, Massachusetts, New Mexico, Oklahoma, Texas, and Virginia, brought by *qui tam* Co-Relators Loren D. Alves, DDS, Philip M. Lin, DMD, and Nicole Winston, to recover all damages, civil penalties, and other recoveries for violations of the Federal False Claims Act, 31 U.S.C. §§3729 *et seq.*, and the respective False Claims Acts of the States of Connecticut, Georgia, Indiana, Massachusetts, New Mexico, Oklahoma, Texas, and Virginia (hereinafter, "the Affected States").

## I.
## INTRODUCTION

1.    Each of the Co-Relators – Dr. Alves, Dr. Lin, and Ms. Winston – possesses eyewitness information that the Kool Smiles dental practice empire was predicated upon a widespread, multistate scheme to perpetrate dental Medicaid fraud against the Medicaid programs of the states in which Kool Smiles owns and operates dental clinics, using unsuspecting patients, primarily low-income children, in the process.  As detailed below, each of the three Co-Relators

brings a different vantage point: (1) Dr. Alves is an independent pediatric dentist in Texas who routinely observed and treated former Kool Smiles patients; (2) Dr. Lin is a former Kool Smiles dentist in Texas pressured by Kool Smiles to overtreat patients by performing excessive and medically unnecessary treatments as part of Kool Smiles' corporate strategy; and (3) Ms. Winston is a former Kool Smiles dental assistant in Virginia who observed overtreatment and "upcoding" (billing for services not rendered or overbilling for lesser services). Dr. Lin and Ms. Winston also observed, and suffered from, sustained pressure by non-dentists in management positions to place corporate profits over patient care by exerting undue influence on dental care decisions. Ultimately, they individuals refused to participate in the fraud and tried to stop it or speak out against it internally on numerous occasions, leading to their respective terminations.

## II.
## JURISDICTION AND VENUE

2.      This *qui tam* action is brought under the federal False Claims Act and is filed in camera and under seal pursuant to 31 U.S.C. §§3729-3733. It is also brought under the respective False Claims Acts of Connecticut, Georgia, Indiana, Massachusetts, New Mexico, Oklahoma, Texas, and Virginia.

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1341, 1345; 31 U.S.C. §3732(a); and its general equity jurisdiction.

4.      Venue is proper in the Western District of Texas under 28 U.S.C. §1391(b) and 31 U.S.C. §3732(a) as a place where false claims arose or were made. This action is properly filed in the San Antonio Division because a substantial number of the false claims submitted by defendants were generated in dental offices within this Division. In addition, one of the Co-Relators, Dr. Alves, is a resident of the San Antonio area and has treated dozens of patients treated by Kool Smiles clinics in the San Antonio area.

5.     This action is not based upon any public disclosure, as that term is defined in 31 U.S.C. §3730(e)(4)(A).  Even if it were, Co-Relators are nonetheless original sources, as that term is defined in 31 U.S.C. §3730(e)(4)(B).

6.     The court has supplemental jurisdiction over the state *qui tam* actions under 28 U.S.C. §1367 because the claims are so related to the claim within the Court's original jurisdiction that they form part of the same case or controversy.  28 U.S.C. §1332 also provides jurisdiction over the state *qui tam* actions because they are actions between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

## III.
## PROCEDURE

7.     This Complaint has been filed under seal as required by 31 U.S.C. §3730(b)(2).

8.     In accordance with 31 U.S.C. §3730(b)(2) and applicable state law, Co-Relators served this complaint and substantially all material evidence and information in their possession upon: The Attorney General of the United States; the United States Attorney for the Western District of Texas; and the Attorneys General for the States of Connecticut, Georgia, Indiana, Massachusetts, New Mexico, Oklahoma, Texas, and Virginia ("the Affected States").

## IV.
## PARTIES

9.     **CO-RELATOR LOREN D. ALVES, DDS**, is an individual who resides in Bexar County, Texas.  Dr. Alves is licensed and board certified to practice Pediatric Dentistry by the Texas State Board of Dental Examiners.  As a pediatric dentist in the State of Texas, Dr. Alves has treated many former Kool Smiles patients. Through his practice, he acquired knowledge of the serious harm Kool Smiles is causing to children.  Furthermore, Dr. Alves has evaluated their pretreatment records; from these records, he has identified Defendants' Medicaid fraud scheme.

10.     **CO-RELATOR / PLAINTIFF PHILIP M. LIN, DMD**, is an individual who resides in Angelina County, Texas. Dr. Lin is licensed and board certified to practice General Dentistry by the Texas State Board of Dental Examiners and the Washington State Board of Dentistry. Defendants KS2 TX, PC D/B/A KOOL SMILES, and DENTISTRY OF BROWNSVILLE, PC D/B/A KOOL SMILES employed Dr. Lin as a dentist from approximately September 2011 through approximately September 2012. In that capacity, Dr. Lin observed firsthand the defendants' massive Medicaid fraud scheme which, in addition to bilking the Texas Medicaid Program of millions of dollars, was causing serious harm to children.[1] Dr. Lin's refusal to participate in the fraud, and his attempts to stop the fraud of others at Kool Smiles, led his supervisors to terminate his employment. In addition to his *qui tam* claims, Dr. Lin brings wrongful termination claims against several Defendants for terminating his employment in violation of Section 36.115 of the Texas Human Resources Code and the *Sabine Pilot* doctrine.

11.     **CO-RELATOR / PLAINTIFF NICOLE WINSTON** is an individual who resides in the City of Richmond, Virginia. Ms. Winston is a former dental assistant who worked at two Kool Smiles locations in the Richmond, Virginia vicinity between approximately 2005 and 2008, and again from approximately 2008 to the fall of 2012. As a former employee, Ms. Winston has firsthand information and knowledge regarding Defendants' fraudulent dental practices. As discussed below, Ms. Winston's refusal to continue to participate in Defendants' fraud, and her attempts to stop the fraud of others at Kool Smiles, led her supervisors to terminate her employment. In addition to her *qui tam* claims, Ms. Winston brings wrongful termination claims against several Defendants for terminating her employment in violation of Section 8.01-216.8 of the Virginia Code.

---

[1] Dr. Lin's firsthand knowledge includes knowledge gained from direct patient care at Kool Smiles, attending Kool Smiles trainings by corporate directors, reviewing patient charts, and conversations with other Kool Smiles employees and managers regarding Kool Smiles' practices which constituted Medicaid fraud.

12.     The facts averred herein are based upon the personal observations of each of the Co-Relators, as well as any documents in their respective possession.

13.     Co-Relators have provided to the United States Attorney and the Attorneys General of Connecticut, Georgia, Indiana, Massachusetts, New Mexico, Oklahoma, Texas, and Virginia, a full disclosure of substantially all material facts, as required by the False Claims Act, 31 U.S.C. § 3730(b)(2), and relevant state statutes.

14.     Defendant **NCDR LLC**, is a limited liability company incorporated under the laws of the State of Delaware, whose principal place of business is located in Marietta, Georgia.  NCDR, LLC is registered and authorized to conduct business within the State of Texas. It may be served with process upon its registered agent: C T Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234. NCDR, LLC owns, operates, manages, controls, and orchestrates the business affairs of Kool Smiles General Dentistry for Children, which includes but not limited to KS2 TX, P.C., and Dentistry of Brownsville, P.C.

15.     Defendant **DALE G. MAYFIELD, DDS,** is an individual practicing dentistry in Cameron County, Texas and Decatur County, Georgia and he may be served with process at his business address: 400 Galleria Parkway, Suite 800, Atlanta, GA 30339.  Dr. Mayfield operates, controls, and orchestrates the business affairs of the defendants.  Dr. Mayfield assisted in planning and implementing policies and a business model to commit dental Medicaid fraud.

16.     Defendant **TU M. TRAN, DDS,** is an individual practicing dentistry in Cameron County, Texas and Decatur County, Georgia and he may be served with process at her business address: 400 Galleria Parkway, Suite 800, Atlanta, GA 30339.  Dr. Tran, founder of Kool Smiles, owns, operates, controls, and orchestrates the business affairs of the defendants.  Dr. Tran planned and implemented policies and a business model to commit dental Medicaid fraud.

17.   Defendant **KS2 TX, P.C. D/B/A KOOL SMILES** is a professional association doing business in Bexar County, Texas, Cameron County, Texas, El Paso, Texas, Hidalgo County, Texas, Webb County, Texas, and other Texas counties, and may be served with process upon its registered agent: C T Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.  Defendant NCDR LLC owns, operates and controls this entity.

18.   Defendant **DENTISTRY OF BROWNSVILLE, P.C., D/B/A KOOL SMILES,** is a professional association doing business in Bexar County, Texas, Cameron County, Texas, Harris County, Texas Hidalgo County, Texas, McLennan County, Texas, Webb County, Texas, and other Texas counties, and may be served with process upon its registered agent: C T Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.  Defendant NCDR LLC owns, operates and controls this entity.

19.   Defendant **JOHN DOES 1-10** may be served wherever they may be found.  These defendants are current and former employees of the defendant dental clinics operating as Kool Smiles, employed as dentists, dental assistants, staff, and marketers.

20.   In the event any parties are misnamed or not included herein, such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein.  In the event that the true parties are misidentified, Co-Relators hereby assert reliance upon the doctrine of misidentification.

21.   Unless otherwise noted, hereinafter, all of the defendants will be collectively referred to as "Kool Smiles."

**V.**
**BACKGROUND AND FACTS**

A.   **Background on the Affected Government Health Care Programs**

22.    Each of the Affected States - Connecticut, Georgia, Indiana, Massachusetts, New Mexico, Oklahoma, Texas, and Virginia – administers and implements its Medicaid program under the provisions of Title XIX of the Federal Social Security Act and its respective state law. Each state shares the cost of its own Medicaid program, including the dental benefits at issue in this case, with the federal government; the ratio of Federal-to-State contribution varies by state, with the Federal Medicaid Assistance Percentage (FMAP) in FY2012 ranging from 50% (in Connecticut, Massachusetts, and Virginia, among others) to 69% (in New Mexico).[2]

23.    While each state has its own variations in the implementation of its Medicaid program, the basic administration mechanism is the same:  through contracts and agreements with medical providers, claims administrators (claims reimbursement processors), contractors, enrollment brokers, various managed care organizations, and state agencies.  Medicaid providers, such as Defendants in this case, choose to be enrolled into the Medicaid program through a voluntary application process.  This process includes completing legally binding forms and meeting specific eligibility requirements.  In general, a recognized professional licensing authority must authorize all licensed professionals, such as dentists.  Moreover, each state promulgates its own applicable licensure and certification requirements for dental hygienists and dentists; similarly, each state enacts its own laws and regulations governing the practice of dentistry within its state. Accordingly, Medicaid providers are required to comply with the specific requirements placed on them by the state Medicaid program, in addition to the generally applicable licensing provisions and laws governing the practice of dentistry in that state.  Medicaid providers are

---

[2] The enhanced FMAP rates in the affected states range from 65% to 79% for FY2012.

reimbursed either on a fee-for-service basis, either through a direct reimbursement from the State (or its agent) or through a "managed care" style implementation of the Medicaid program.[3]

**B.      Creation of Kool Smiles and Its Fraudulent Policies and Business Model**

24.    In 1998, Defendant, Dr. Tu Tran, received his Doctor of Dental Surgery degree from the University of Colorado.  In 2001, Dr. Tran joined Smile High Dentistry, a clinic co-owned by Dr. Michael DeRose and Dr. William Mueller in Denver, Colorado.[4]   While working at this Small Smiles affiliate, he met Dr. Thein Pham, his future partner and co-creator of Kool Smiles. Here, the doctors gained insight as to how build a business model, which preys upon the Medicaid populations, and as a result, defrauds Medicaid of millions of dollars.  In 2002, Dr. Tran left his position as Lead Dentist Smile High Dentistry to create Kool Smiles with Dr. Thein Pham. The Kool Smiles model involves a dentist, such as Dr. Tran, incorporating a new Kool Smiles company in each state the clinics are located. The Kool Smiles corporate chain of clinics is run by Defendant NCDR, a Delaware formed limited liability corporation.

25.    Kool Smiles opened its first door in Decatur, Georgia on August 12, 2002.  By June 15, 2006, Kool Smiles had fifteen locations across four states: Georgia, Indiana, Massachusetts, and

---

[3] The specific provisions of each state's Medicaid programs, including its applicable rules, regulations, and processes for reimbursement, can be found in a state's Medicaid provider manual.  These manuals are typically available online for public access.    *See, e.g.,*  Connecticut Medicaid Provider Manual, (available at <https://www.ctdssmap.com/CTPortal/Information/Publications/tabId/40/Default.aspx>) (last visited Aug. 8, 2013); Georgia Medicaid Provider Manual (available at https://www.mmis.georgia.gov/portal/PubAccess.Provider%20Information/Provider%20Manuals/tabId/54/Default.a spx )(last visited Aug. 8, 2013); Indiana Health Coverage Programs Provider Manual, (available at <http://provider.indianamedicaid.com/general-provider-services/manuals.aspx> ) (last visited Aug. 8, 2013); MassHealth Dental Manual (available at http://www.mass.gov/eohhs/gov/laws-regs/masshealth/provider-library/provider-manual/dental-manual.html )(last visited Aug. 8, 2013); New Mexico Medicaid Provider Program Policy Manual, (available at < http://www.hsd.state.nm.us/mad/RPolicyManual.html >) (last visited Aug. 8, 2013); Oklahoma Provider Billing and Procedure Manual (available at https://okhca.org/providers.aspx) (last visited Aug. 8, 2013);   Texas   Medicaid   Provider   Procedures   Manual,   (available   at <http://www.tmhp.com/Pages/Medicaid/Medicaid_Publications_Provider_manual.aspx>)  (last  visited  Aug.  8, 2013);   Virginia   Medicaid   Program   Provider   Manual   (available   at https://www.virginiamedicaid.dmas.virginia.gov/wps/portal/ProviderManual>) (last visited Aug. 8, 2013).

[4] In 2010, Small Smiles reached a $24 million settlement with the Department of Justice for submitting false and fraudulent claims to Medicaid for unnecessary treatment to children.

Virginia.  Kool Smiles was extremely active in 2007.  By July 17, 2007, it expanded from 15 to 37 locations, spanning six states. That same year, Kool Smiles set its sight on Texas. As a result of the *Frew* case, Texas began increasing Medicaid reimbursement rates in September 2007.[5] This increase of funding incited Kool Smiles' rush to implement its fraudulent Medicaid-bilking scheme in Texas' fertile grounds. Before the end of that month, both KS2 TX, PC and Dentistry of Brownsville, PC were created with the Texas Secretary of State as professional associations. Less than six months from the implementation of court-ordered expansion of coverage, Kool Smiles' first Texas office opened on January 1, 2008 in Brownsville.  Upon information and belief, Kool Smiles currently has <u>130</u> offices across <u>16</u> states and Washington D.C.  Out of the Affected States, Texas has the largest number of Kool Smiles clinics.

26.     Incidentally, in 2007 – the same year Kool Smiles began to infiltrate Texas, it came under government scrutiny.  On August 22, 2007, the Georgia Department of Community Health indicated it was investigating Kool Smiles' "patterns of over-utilization of services," "unusual patterns of patient restraint," "over-utilization of stainless steel crowns," and "the

---

[5] *Frew v. Gilbert*, 109 F.Supp.2d 579 (E.D. Tex. 2000), *vacated by Frazar v. Gilbert*, 300 F.3d 530 (5th Cir. 2002), *cert. granted in part by Frew ex. rel. Frew v. Hawkins*, 538 U.S. 905 (2003), *rev'd and remanded by Frew ex. rel. Frew v. Hawkins*, 376 F.3d 444 (5th Cir. 2004), *Frew v. Hawkins*, 401 F.Supp.2d 619 (E.D. Tex. 2005), *subsequent appeal and aff'd by Frazar v. Ladd*, 457 F.3d 432 (5th Cir. 2006), *cert. denied by Hawkins v. Frew*, 549 U.S. 1118 (2007).

In 1993, Ms. Frew filed a federal class-action lawsuit against the Texas Health and Human Services Commission, alleging that children enrolled in the Texas Medicaid were not receiving adequate preventive and specialty care services, including dental care, to which they were entitled under the State's EPSDT program.  The case was settled through a consent decree, and a federal district court approved a comprehensive document in 1996, detailing procedures for Texas health officials to meet federal guidelines.  In 2000, the State of Texas was found to be in violation of multiple sections of the consent decree and was ordered to develop and implement a corrective action plan.  After additional appeals, in 2005 the State of Texas was again ordered to take corrective action for violations found in 2000.   After another unsuccessful appeal, the State agreed to a new Corrective Action Order to make substantial appropriations to fully fund dental services and increase reimbursement rates to providers. Unfortunately, the increased funding was not protected with adequate budgetary safeguards, and providers such as Kool Smiles flocked to Texas to exploit the Texas Medicaid program.

appropriateness of cared delivered" by Kool Smiles.[6]  On August 27, 2007, WellCare of Georgia, Inc., the manager of Georgia's Medicaid programs, announced it had performed an analysis of Kool Smiles' Medicaid claims data and found that, when compared with other dentists, a child treated by Kool Smiles was "five times more likely to receive [stainless steel] crowns," "four times more likely to receive five or more [stainless steel] crowns," "[forty percent] more likely to have their teeth pulled or extracted," and "three times more likely to be physically restrained during dental procedures."[7]

27.     In a letter dated October 27, 2010, Connecticut's Department of Social Services indicated, that their licensed dental reviewers found that "Kool Smiles' dental providers routinely fail to follow the Regulations of the Connecticut Medical Assistance Program and fail to achieve expected standards of care."[8] The department further noted "Kool Smiles' protocols and peer-to-peer audits are an ineffective method for training and evaluating dentists, as the evidence and [their] review of dental care provided demonstrate. In addition to the poor quality of dental care provided, Kool Smiles' dentists have continued to practice without regard to the CMAP regulations or medical necessity."[9]

28.     Criticism has not solely focused on Kool Smiles as a whole, but on its founding dentist and owner. In 2008, Dr. Tran's license to practice dentistry in the State of Massachusetts was sanctioned and placed on probation by the dental licensing agency of Massachusetts and the

---

[6] Press Release, Georgia Dep't of Cmty Health, DCH Statement Concerning Possible Class Action Lawsuit Regarding Medicaid Dental Services (Aug. 22, 2007) (on file with undersigned counsel).
[7] Press Release, WellCare, WellCare Assures Medicaid Members of Access to Quality Dentists (Aug. 27, 2007) (on file with undersigned counsel).
[8] Letter from Michael P. Starkowski, Commissioner, State of Connecticut Department of Social Services, to Andrew T. Oreffice, Vice President NCDR LLC/Kool Smiles (Oct. 2010) (on file with the undersigned counsel).
[9] *Id.*

Massachusetts Board of Registration in Dentistry.[10] Furthermore, the State of Georgia placed Dr.

Tran's license on a two-year probation in February of 2011.[11]

## C.   Defendants Created A Business Model to Exploit the Expansion Of Dental Services Under The Affected Medicaid Programs

29.    While many children have benefitted from the expansion of Medicaid dental services,

unscrupulous dentists – and corporate dental entities – such as Kool Smiles saw the expansion

and increased funding of dental services under the Medicaid program as a lucrative opportunity

to use children to commit Medicaid fraud.  Kool Smiles keenly observed it could make millions

of dollars using children as means of defrauding Medicaid, and engaged in a systematic

expansion to exploit the Medicaid program in numerous states.

30.    The explosion of dental Medicaid fraud has been fueled, in part, as an unintended

consequence of the *Frew* litigation in Texas.  On August 14, 2007, Defendant KS2 TX P.C., filed

its certificate of formation of a professional corporation. The following month, as a result of

*Frew*, Texas began to implement corrective action, thus expanding Medicaid dental services

within the state. Within ten years, Kool Smiles has expanded its Texas empire to 39 dental

clinics in Texas and billed Medicaid millions of dollars for fraudulent claims.

31.    The Kool Smiles story is not unique to Texas.   While Defendants may tweak their

fraudulent business model based on reimbursement requirements in each of the States at issue in

this lawsuit, the general *modus operandi* remains the same – performing medically unnecessary

or excessive dental procedures to generate revenue from the Medicaid program, engaging in

"upcoding" by charging services for higher reimbursement rates than the service actually

provided, or even billing Medicaid for services not rendered.  Upon information and belief, some

---

[10]*See In re Tu M. Tran D.D.S*, Public Consent Order for Renewal License, Docket No. 2011-0277 (available at https://secure.sos.state.ga.us/mylicense%20weblookup/docs/2011_0277_dn012562_001.pdf) (last visited Aug. 8, 2013).
[11]*Id.*

Kool Smiles entities may have also engaged in illegal "kickback" practices forbidden by the federal Medicaid program by paying recruiters to bring in new Medicaid patients or lure new Medicaid patients directly to receive dental services (and unwittingly become conduits of Medicaid fraud).

32.     In addition to the unlawful specific unlawful acts and practices described below, Kool Smiles engaged in unlawful practices such as performing dental procedures on minor children without the presence or informed consent of that child's parent or legal guardian.[12]  For example, Texas law requires that a parent or guardian remain present when a child is receiving health care from a Texas Medicaid provider.[13]  Kool Smiles would often dismiss or not allow a guardian to observe and be present during her child's treatment.  The purpose was to keep hidden the trauma the child was enduring.

33.     Specifically, a dentist must disclose the risks or hazards that could have influence a reasonable person in making a decision to give or withhold consent for treatment.  Ordinarily, a dentist may not treat a child unless the dentist obtains the consent of the child's guardian.[14]  For the guardian's consent to be effective, it must have been an "informed consent."  True consent involves the informed exercise of choice.[15]  Such consent is required for all treatment plans and procedures where a reasonable possibility of complications from the treatment planned or a

---

[12] While these specific allegations are based on activities in Texas and Virginia, Co-Relators have a good faith belief Kool Smiles encouraged, participated, or specified similar misconduct by its employees and contractors in each of the Kool Smiles clinics in each of the Affected States as part of its business model.

[13] TMPPM at §5.3.4.

[14] *See, e.g.,* TEX. FAM. CODE §151.001(a).

[15] For example, Rule 108.7 of the Rules and Regulations of the Texas State Board of Dental Examiners requires Texas dentists to maintain a written informed consent signed by the parent or legal guardian. *See* TMPPM at §5.2.6 Client Rights (providing "Dental providers enrolled in Texas Medicaid enter into a written contract with the HHSC to uphold the following rights of the Medicaid client:. . . To receive information following a dental examination about the dental diagnosis; scope of proposed treatment, including alternatives and risks; anticipated results; and the need and risks for administration of sedation or anesthesia.  To have full participation in the development of the treatment plan and the process of giving informed consent.").

procedure exists, and such consent should disclose risks or hazards that could influence a reasonable person in making a decision to give or withhold consent. Therefore, under TSBDE Rule 108.7, Informed Consent:

    (1)    Must be signed (and dated) by the parent or legal guardian;
    (2)    Is required for all treatment plans and procedures where a reasonable possibility of complications from the treatment or procedure exists; and
    (3)    Such consent must disclose risks or hazards that could influence a reasonable person in making a decision to give or withhold consent.

34.    In the cases where Kool Smiles obtained a guardian's signature on a consent form, such consent was not proper for one of the following reasons:

    (1)    The consent obtained was not informed consent;
    (2)    Kool Smiles failed to comply with TSBDE Rule 108.7;
    (3)    Because, in many cases, the guardian could not communicate in English and/or the guardian had no idea what she was consenting to; or
    (4)    Some of the consents obtained were from guardians who were illiterate.

35.    In addition to this unlawful activity with regard to the lack of informed consent, Co-Relators outline specific unlawful or fraudulent practices below in Section VIII, *infra*.

**D.    Specific Information from Each of the Co-Relators**

36.    Each of the three Co-Relators in this lawsuit has a unique perspective and universe of personal knowledge as to the Medicaid fraud being committed by various Kool Smiles entities. As noted above, Dr. Alves is licensed and board certified to practice Pediatric Dentistry by the Texas State Board of Dental Examiners. Through his private practice, Dr. Alves treated numerous former Kool Smiles patients, thus seeing firsthand the serious harm Kool Smiles caused to its child patient population on Medicaid. Through the course of his treatment of these patients, as well as his own investigation and research of these patients' pretreatment records, Dr. Alves identified the fraudulent conduct that constituted the Kool Smiles scheme outlined in further detail in Section VI below.

37.     Dr. Lin was employed as a Kool Smiles dentist from approximately September 2011 through approximately September 2012.   In that capacity, Dr. Lin observed firsthand the defendants' massive Medicaid fraud scheme which, in addition to bilking the Texas Medicaid Program of millions of dollars, was causing serious harm to children. Dr. Lin estimated 85% of the Kool Smiles patients he treated were Medicaid patients.   Dr. Lin's firsthand knowledge includes knowledge gained from direct patient care at Kool Smiles, attending Kool Smiles trainings by corporate directors, reviewing patient charts, and conversations with other Kool Smiles employees and managers regarding Kool Smiles' practices which constituted Medicaid fraud.   Through his knowledge and personal experience, Dr. Lin identified the fraudulent conduct that constituted the Kool Smiles scheme outlined in further detail in Section VI below.

38.     For example, Dr. Lin was repeatedly "encouraged" by his supervisors to perform pulpotomies, along with a stainless steel crown, even for Class 1 caries – these instructions departed from his dental school training.  These recommended protocols were delivered by Dr. Nunez, the Kool Smiles regional director for the East Texas region where Dr. Lin worked; in fact, the PowerPoint presentations for these materials were developed by the Kool Smiles corporate office in Georgia.[16]  In one of these Kool Smiles presentations, Dr. Nunez encouraged the dentists, including Dr. Lin, to use a "papoose board" to deliver treatment to young, reluctant patients instead of referring them to a pediatric dentist.

39.     On several occasions, Dr. Lin changed a treatment plan from the Kool Smiles scheme (i.e., implementing a treatment plan such as keeping a tooth under observation or using a filling instead of a more aggressive treatment); these changes were not well-received by his supervisors. While a less aggressive treatment plan would benefit the client, it came with a personal cost to

---

[16] In addition, the office manager at the Kool Smiles location in Lufkin, Texas, where Dr. Lin worked was not a dentist.

Dr. Lin – a lower production volume made it more difficult for him to meet the Kool Smiles production "goal" of $48,000 in bills per month.  Because a large part of Dr. Lin's compensation (like other Kool Smiles dentists) was based on production, e.g., he would get to keep 25% of every dollar in bills he was able to generate over the $48,000 production goal, his legitimate treatment of patients made him unable or unlikely to reach these production goals and receive production bonuses over his baseline salary.

40.     Dr. Lin was told by Dr. Nunez that the latter: (1) did not perform enough stainless steel crown (SSC) procedures; (2) referred too many Medicaid patients to other dentists, instead of retaining the patients, i.e., revenue sources, within Kool Smiles.   Ultimately, Dr. Lin's employment was terminated by Kool Smiles in September 2012.  The ostensible reason he was given was for low production numbers; he had never received any negative performance reviews or feedback for the quality of his work, lateness, etc.

41.     Ms. Winston worked as a dental assistant at two Kool Smiles clinics in Richmond, Virginia, from approximately 2005 to 2008, and then again from 2008 until her termination in September 2012.   As part of her duties, Ms. Winston treated patients by taking x-rays and cleaning their teeth; on occasion, she worked with Kool Smiles dentists who were providing orthodontic care.   According to Ms. Winston, Kool Smiles' non-dentist staff, such as office manager Laura Knight, pressured Kool Smiles dentists and dental assistants to overtreat patients for procedures that were not medically necessary or for conditions that were not present.  Ms. Winston also drew the ire of her supervisors for entering incorrect or fraudulent information into the Kool Smiles computer system, which then would be used to justify fraudulent Medicaid billing.  Her refusal to participate in these practices led to her termination.[17]

---

[17] In fact, approximately one week before her termination, Ms. Winston spoke reported to Virginia Medicaid fraud investigator about the Medicaid fraud she observed Kool Smiles committ.

42.     For example, Ms. Winston was instructed to insert the code for a filling when in fact a patient had not received a filling, but rather only a sealant.  She encountered this type of subterfuge on numerous occasions, though usually limited to particular dentists.  Also, Ms. Winston recalls that all dentists were instructed (by non-dental management) to utilize crowns even for small cavities that could otherwise be treated adequately with a less-expensive filling; the basis for this treatment protocol was the higher reimbursement rate for crowns.

43.     Ms. Winston estimates approximately 90% of the patients at these clinics were Medicaid patients, noting that Kool Smiles operated these clinics near known low-income housing neighborhoods.  Ms. Winston also recalled Kool Smiles delivering flyers door-to-door to recruit new patients.  While she did not recall whether Kool Smiles offered cash incentives to parents bringing in children for treatment, she did recall that Kool Smiles offered gift cards and other incentives to its employees who brought in new patients, particularly those eligible for Medicaid. Because of her opposition to Medicaid fraud, Kool Smiles terminated Ms. Winston's employment, in violation of in violation of Section 8.01-216.8 of the Virginia Code.

## VI.
## DEFENDANTS' FALSE CLAIMS AND UNLAWFUL ACTS

**A.     Kool Smiles committed false claims unlawful acts by performing medically unnecessary or inappropriate treatments upon children**

**Medically unnecessary or excessive, or both, pulpotomies on children.**

44.     Kool Smiles' most egregious fraud involved performing medically unnecessary or excessive, or both, pulpotomies on children's baby teeth. A pulpotomy, commonly known as a "baby root canal," is the "surgical removal of a portion of the pulp with the aim of maintaining the vitality of the remaining portion by means of an adequate dressing."[18] The Texas Medicaid

---

[18]See American Dental Association Practice Guide to Dental Procedure Codes at 19 (2011-2012).

program reimburses a dentist $87.96 for a pulpotomy.[19]  It is rare, however, that a dentist would perform more than four or six pulpotomies on a child in one visit.  If a child requires more than six pulpotomies, then the standard of care generally requires that a dentist that specializes in pediatric dentistry treat the child.  Furthermore, a pediatric dental specialist would perform those multiple pulpotomies in a hospital or surgical center with the child under general anesthesia or IV anesthesia, neither of which was offered at Kool Smiles.  There is a significant health risk to the child when undergoing multiple pulpotomies.[20]

45.    Kool Smiles performed medically unnecessary or an excessive number of pulpotomies on primary teeth (baby teeth)—CDT D3220.[21]  Alternatively, assuming such procedures may have

---

[19]  A pulpotomy is actually a bundled service.  *See* TMPPM at §5.3.15 (stating "Reimbursement for a root canal includes all appointments necessary to complete the treatment.  Pulpotomy and radiographs performed pre, intra, and postoperatively are included in the root canal reimbursement.").  Again, while this pleading references the Texas Medicaid Manual, Co-Relators allege Kool Smiles' conduct was in violation of analogous provision in each of the Affected States' Medicaid rules and regulations.  Based upon information and belief, Kool Smiles would unbundle this service and submit multiple billings.  For example, if more than one patient visit was required to complete the pulpotomy, Kool Smiles would bill for each patient visit.  Kool Smiles would also bill separately for the radiographs (using CDT codes D0210-D0340).  In such ways, Kool Smiles was able to unbundle the root canal bundled reimbursement and split it into several claims for reimbursement, and thus inflating the actually reimbursement.

[20]*See, e.g.,* 2010 Texas Medicaid Provider Procedures Manual, Vol. 2, *Children's Service Handbook,* at §5.2.6:

**Client Rights:**  Dental providers enrolled in Texas Medicaid enter into a written contract with the HHSC to uphold the following rights of the Medicaid client:

- To receive dental services that meet or exceed the standards of care established by the laws relating to the practice of dentistry and the rules and regulations of the TSBDE.
- To receive information following a dental examination about the dental diagnosis; scope of proposed treatment, including alternatives and risks; anticipated results; and the need and risks for administration of sedation or anesthesia.
- To have full participation in the development of the treatment plan and the process of giving informed consent.
- To have freedom from physical, mental, emotional, sexual, or verbal abuse or harm from the provider or staff.
- To have freedom from overly aggressive treatment in excess of that required to address documented medical necessity.
- A provider's failure to ensure any of the client rights may result in termination of the provider agreement or contract and other civil or criminal remedies.

[21]  "CDT" is the acronym for the "Current Dental Terminology."  The American Dental Association is the copyright owner of and publisher of the CDT manual and *Code.*  According to the ADA, "the *CDT Code,* provides uniformity,

been medically necessary, Kool Smiles performed pulpotomies on primary teeth in a manner that was substantially inadequate or inappropriate given the standard of care.  An example being that the procedure performed breached the standard of care by failing to remove all of the pulpal tissue or perforating the pulpal floor.

46.     Kool Smiles performed an excessive number of pulpotomies on a child in one dental appointment.  Moreover, the TMPPM requires the child's guardian be "present" during these dental procedures.  But, in cases involving multiple pulpotomies, Kool Smiles almost always prohibited the child's guardian from being present.  While there may be situations in which it is appropriate for a child's guardian to not be present during procedures (e.g., the guardian is interfering with the delivery of the dental services or is disruptive), Kool Smiles sequestered the guardian to keep hidden the child's suffering.

47.     In addition, Kool Smiles would often perform a pulpotomy on a child when it was medically unnecessary.  For example, Kool Smiles would perform a pulpotomy even though it was not radiographically indicated that decay had affected the tooth nerve.

48.     Also, Kool Smiles failed to properly document the medical necessity of performing a pulpotomy, especially in those cases where multiple pulpotomies where performed on a child.

49.     Through these acts, Kool Smiles knowingly committed unlawful acts as it relates to the treatment of pulpotomies, for which it applied and obtained reimbursement from Medicaid.  By so doing, Kool Smiles committed unlawful acts, in violation of each of the Affected States' respective laws, rules, or regulations with regard to delivery of services to Medicaid patients.  These unlawful acts caused Medicaid to pay Kool Smiles for thousands of pulpotomy claims,

---

consistency, and specificity in documenting dental treatment.  It also supports recording of patient services rendered and facilitates claims administration."  *See* THE ADA PRACTICAL GUIDE TO DENTAL CODING, CDT COMPANION (2010) at 4.  The CDT Code is organized into twelve categories of service, each with its own series of five-digit alphanumeric codes.  These categories reflect dental services that are considered similar in purposes.  *Id.* at 7.  The Texas Medicaid Provider Procedures Manual uses the CDT codes to process reimbursement claims.

which were actually unreimbursable because the pulpotomy services were either medically unnecessary or substantially inadequate or inappropriate given the standard of care, or both.

**Kool Smiles placed medically unnecessary or excessive silver caps on children**

50.     Kool Smiles placed medically unnecessary or an excessive number of stainless steel crowns (SSC) on primary teeth (baby teeth)—CDT D2930.   Alternatively, assuming such procedures may have been medically necessary, Kool Smiles placed stainless steel crowns on primary teeth in a manner that was substantially inadequate or inappropriate given the standard of care. Examples of such breaches includes, but not limited to, over-preparing the tooth, improperly seating the SSC, and poorly adapted SSC margins.

51.     Stainless steel crowns are often referred to as "silver caps."  When a child has multiple caps put on, the child is derogatorily called a "silver mouth" or "metal mouth," which can be psychologically harmful to a child and subject him to derision and taunting by his peers.

52.     Kool Smiles' pulpotomy fraud was often a precursor to its SSC fraud.  Texas Medicaid, for example, reimburses a dentist $156.06 for each SSC.  As it did with the pulpotomies, Kool Smiles would often perform numerous SSCs on a child in one dental appointment.

53.     Kool Smiles would often perform a SSC on a child when it was medically unnecessary to do so.  For example, Kool Smiles would bill Medicaid for a crown even though it was not radiographically indicated to proceed with such treatment, or when it had performed a pulpotomy on that same tooth when not medically necessary;

54.     In addition, Kool Smiles failed to properly document the medical necessity of performing a SSC, especially in those cases where multiple SSCs where performed on a child.  By failing to comply with the applicable Medicaid manual, Kool Smiles committed unlawful and submitted false claims;

55.     Kool Smiles knowingly committed unlawful acts as it relates to the treatment of SSCs, for which it applied and obtained reimbursement from Medicaid.  These unlawful acts caused Medicaid to pay Kool Smiles for thousands of SSC claims, which were actually unreimbursable because the SSC services were either medically unnecessary or substantially inadequate or inappropriate given the standard of care, or both.

56.     Through these acts, Kool Smiles knowingly committed unlawful acts as it relates to the placement of stainless steel crowns, for which it applied and obtained reimbursement from Medicaid.  By so doing, Kool Smiles committed unlawful acts and submitted false claims, in violation of each of the Affected States' respective laws, rules, or regulations with regard to delivery of services to Medicaid patients.  These unlawful acts and false claims caused Medicaid to pay Kool Smiles for thousands of SSC claims, which were actually unreimbursable because these services were either medically unnecessary or substantially inadequate or inappropriate given the standard of care, or both.

**Kool Smiles performed unnecessary or excessive root canals on permanent teeth.**

57.     Kool Smiles performed medically unnecessary or an excessive number of root canal therapies on permanent teeth—CDT D3230.  Alternatively, assuming such procedures may have been medically necessary, Kool Smiles performed those root canal therapies on permanent teeth in a manner that was substantially inadequate or inappropriate given the standard of care.

**Kool Smiles performed medically unnecessary and/or excessive crowns on permanent teeth.**

58.     Kool Smiles performed medically unnecessary crowns on permanent teeth—CDT D2710-2794.  Alternatively, assuming such procedures may have been medically necessary, Kool Smiles performed permanent crowns on adult teeth in a manner that was substantially inadequate or inappropriate given the standard of care.

# VII.
## CAUSES OF ACTION[22]

### COUNT ONE
### (Violations of the Federal Civil False Claims Act)

59.     Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

60.     At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the Medicaid Programs of each of the Affected States regarding dental services they provided to Medicaid clients.

61.     Defendants committed acts in violation of the Federal Civil False Claims Act, by:

(1)     knowingly presenting, or causing to be presented, a false or fraudulent claims for payment or approval by Medicaid.  31 U.S.C. §3729(a)(1)(A).

(2)     knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C. §3729(a)(1)(B).

(3)     conspiring to commit a violation of the False Claims Act, 31 U.S.C. §§3729(a)(1).  31 U.S.C. §3729(a)(1)(C).

(4)     knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money to the Government false or fraudulent claim.  31 U.S.C. §3729(a)(1)(G).

62.     As a result, the United States paid these claims, resulting in damage to the United States, in an amount to be determined at trial.  As Defendants' violations of the False Claims Act are ongoing, the United States continues to be damaged by Defendants.  This amount is to be trebled.  31 U.S.C. §3729(a).  Defendants are also liable for a penalty of $11,000.00 for each separate false or fraudulent claim.  *Id.*

63.     Co-Relators are entitled to the statutory percentage of the amount received by the United

---

[22] This Court is requested to accept supplemental jurisdiction of the related state claims as they are predicated upon the exact same facts as the federal claim, and merely asserts separate damage to each of Affected States in the operation of its Medicaid program.

States, reasonable expenses that have been incurred, attorney's fees, and costs. 31 U.S.C. §3730(d).

## COUNT TWO
### (Violations of the Texas Medicaid Fraud Prevention Act)

64.     Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.  Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.  Additionally, Co-Relators state the course of conduct described in this Complaint was a nationwide practice of Kool Smiles, which conducts business in the State of Texas.  Upon information and belief, Defendant's actions described herein occurred in Texas and each of the Affected States.

65.     At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the Texas Medicaid Program regarding dental services they provided to Medicaid clients.

66.     Defendants committed unlawful acts, in violation of the Texas Medicaid Fraud Prevention Act (TMFPA),[23] by:

(5)     knowingly making or causing to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized.  Tex. Hum. Res. Code §36.002(l)(A) &(B).

(6)     knowingly concealing or failing to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized. Tex. Hum. Res. Code §36.002(2).

(7)     knowingly making, causing to be made, inducing, or seeking to induce the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program. Tex. Hum. Res. Code §36.002(4)(B).

---

[23] The TMFPA is a statute of absolute liability. There are no statutory, equitable, or common law defenses for any violation of its provisions. Further, Texas jurisprudence provides that the defenses of estoppel, laches, and limitations are not available against the State of Texas. *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993).

(8)     knowingly paying or receiving consideration as a condition to the provision of a service if the cost of the service is paid for, in whole or in part, under the Medicaid program. Tex. Hum. Res. Code §§36.002(5), 36.002(13).

(9)     knowingly paying, charging, soliciting, accepting, or receiving an unauthorized gift, money, donation or other consideration as a condition to the provision, or continued provision, of a service or product when that service or product was paid for, in whole or in part, under the Medicaid program. Tex. Hum. Res. Code §36.002(5).

(10)    knowingly presenting or causing to be presented a claim for payment under the Medicaid program for a service rendered by a person who is not licensed to render the service or is not licensed in the manner claimed. Tex. Hum. Res. Code §36.002(6).

(11)    knowingly making or causing to be made a claim under the Medicaid program for a service that has not been approved or acquiesced in by a treating health care provider, or a service that is substantially inadequate or inappropriate when compared to generally recognized dental/orthodontic standards. Tex. Hum. Res. Code §36.002(7).

67.    Under Texas Human Resources Code Section 36.052(a), Defendants are liable for:

(1)     all payments they received under the Medicaid program, directly or indirectly, as a result of their unlawful acts in violation of Section 36.002 of the Texas Human Resources Code;

(2)     two times that amount;

(3)     pre and post-judgment interest on the above amounts; and

(4)     a civil penalty between $5,000 to $15,000 for each unlawful act.

68.    Co-Relators and the State are unable, pending full discovery, to determine the total extent of the overpayments caused by Defendants' fraudulent conduct.  In any event, Co-Relators are entitled to receive 15 to 30 percent of the proceeds of this action, as well as an amount for reasonable expenses, reasonable attorney's fees, and costs that the court finds to have been necessarily incurred.  Tex. Hum. Res. Code §36.110.

## COUNT THREE
### (Violations of the Connecticut State False Claims Act)

69.    Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if

fully set forth herein.  Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.  Additionally, Co-Relators state the course of conduct described in this Complaint was a nationwide practice of Kool Smiles, which conducts business in the State of Connecticut.  Upon information and belief, Defendant's actions described herein occurred in Connecticut as well.

70.   At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the Connecticut Medicaid Program regarding dental services they provided to Medicaid clients.

71.   Co-Relators bring this action against Kool Smiles for violations of the Connecticut Medicaid False Claims Act.  *See* Ct. Gen. Stat. Ann. §17b-301b, §17b-301d(a).  Specifically, Co-Relators allege Kool Smiles:

(1)   knowingly presented, or cause to be presented, a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;

(2)   knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;

(3)   conspired to commit a violation of this section;

(4)   had possession, custody or control of property or money used, or to be used, by the state relative to a medical assistance program administered by the Department of Social Services, and intending to defraud the state or willfully to conceal the property, delivered or caused to be delivered less property than the amount for which the person receives a certificate or receipt;

(5)   being authorized to make or deliver a document certifying receipt of property used, or to be used, by the state relative to a medical assistance program administered by the Department of Social Services and intending to defraud the state, made or delivered such document without completely knowing that the information on the document is true;

(6)     knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state under a medical assistance program administered by the Department of Social Services; or

(7)     knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the state under a medical assistance program administered by the Department of Social Services.

*Id.* at §17b-301b(a).

72.     Pursuant to Section 17b-301b(b), Defendants are liable for:

(1)     A civil penalty of not less than $5,500 or more than $11,000 per violation;

(2)     treble damages sustained by the state;

(3)     the costs of investigation and prosecution.

*Id.* at §17b-301b(b).  Defendants shall be held jointly and severally for any violation committed by two or more persons.

73.     Co-Relators and the State are unable, pending full discovery, to determine the total extent of the overpayments caused by Defendants' fraudulent conduct.   However, Co-Relators are entitled to 15 to 25 percent of the proceeds of the action or settlement of these claims, based upon the extent of Co-Relators' substantial contribution to the prosecution of this action, as well as reasonable expenses, attorney fees, and costs, all of which are to be taxed against Kool Smiles. *Id.* at §17b-301e(e).

## COUNT FOUR
### (Violations of the Georgia State False Medicaid Claims Act)

74.     Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Additionally, Co-Relators state the course of conduct described in this Complaint was a nationwide practice of Kool Smiles, which conducts business in the State of Georgia.   Upon information and belief, Defendant's actions described herein occurred in Georgia as well.

75.    At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the Georgia Medicaid Program regarding dental services they provided to Medicaid clients.

76.    This is a qui tam action brought by Co-Relators and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*

77.    Section 49-4-168.1 *et seq.*, of the Georgia Code provides liability for any person who:

   (1)    knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

   (2)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

   (3)    conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid; or

   (4)    knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay, repay or transmit money or property to the State of Georgia.

78.    Co-Relators allege Kool Smiles violated Ga. Code Ann. § 49-4-168.1 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Georgia by its violation of federal and state laws, as described herein.

79.    The State of Georgia, by and through the Georgia Medicaid program and other state health care programs, and unaware of Kool Smiles' fraudulent and illegal practices, paid the claims submitted by the various Kool Smiles entities for Medicaid reimbursement.  Compliance with applicable Medicaid and various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Kool Smiles' fraudulent and illegal practices.  Had the State of Georgia known that Kool Smiles was violating the federal and state laws cited herein, it would

not have paid the fraudulent or false claims submitted by Kool Smiles as described above.

80.     As a result of Kool Smiles' violations of Ga. Code Ann. § 49-4-168.1, the State of Georgia has been damaged in an amount far in excess of millions of dollars exclusive of interest. Co-Relators and the State are unable, pending full discovery, to determine the total extent of the overpayments caused by Defendants' fraudulent conduct.

81.     Each Co-Relator, as described above, is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Ga. Code Ann., § 49-4-168.2(b) on behalf of himself, or herself, and the State of Georgia.

82.     Accordingly, Co-Relators respectfully request the Court award the following damages to the following parties against Defendants:

To the State of Georgia:

(1)     treble damages for the amount of actual damages sustained by the state as a result of Defendants' fraudulent and illegal practices;
(2)     a civil penalty on not less than $5,500 and not more than $ 11,000 for each false claim which Kool Smiles caused to be presented to the State of Georgia;
(3)     prejudgment interest; and
(4)     all costs incurred in bringing this action.

To Co-Relators:

(1)     the maximum amount allowed pursuant to Ga. Code Ann., § 49-4-168.2(i), and /or any other applicable provision of law;
(2)     reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)     an award of reasonable attorneys' fees and costs; and
(4)     such further relief as this Court deems equitable and just.

*See* Ga. Code Ann., § 49-4-168.2(i).

## COUNT FIVE
### (Violations of Indiana False Claims Act)

83.     Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Co-Relators re-allege and incorporate the allegations in the preceding

paragraphs as if fully set forth herein.  Additionally, Co-Relators state the course of conduct described in this Complaint was a nationwide practice of Kool Smiles, which conducts business in the State of Indiana.  Upon information and belief, Defendant's actions described herein occurred in Indiana as well.

84.    At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the Indiana Medicaid Program regarding dental services they provided to Medicaid clients.

85.    Defendants committed unlawful acts, in violation of the Indiana False Claims Act (IFCA), Indiana Code 5-11-5.5-1, *et seq.*, by knowingly or intentionally:

   (1)    presenting a false claim to the state;

   (2)    making or using a false record or statement to obtain payment or approval of a false claim from the state;

   (3)    with an intent to defraud the state, delivering less money or property to the state than the amount recorded on the certificate or receipt received by the Defendant;

   (4)    with an with intent to defraud the state, authorizing issuance of a receipt without knowing that the information on the receipt was true; or

   (5)    making or using a false record or statement to avoid an obligation to pay or transmit property of the state.

Ind. Code 5-11-5.5-2.  In the alternative, Defendants conspired, caused, or induced another person to perform any of the fraudulent acts enumerated above. *Id.*

86.    The Defendants' unlawful acts have cost the State of Indiana many millions of dollars. Relator and the State are unable, pending full discovery, to determine the total extent of the overpayments caused by Defendants' fraudulent conduct.

87.    Under Indiana Code 5-11-5.5-2, each Defendant is liable for:

   (1)    a civil penalty of $5,000 per violation;

(2)     damages not to exceed three (3) times the damages sustained by the State of Indiana;

(3)     reasonable costs incurred in prosecuting this action.

88.     Similarly, pursuant to Indiana Code 12-15-23-8, each Defendant is liable for: (1) damages not to exceed three times the amount paid to Defendant in excess of the amount legally due; (2) a civil penalty of not more than $500 for each instance of overpayment; and/or (3) reasonable costs incurred by the attorney general's office for investigation and enforcement. The court may impose any combination of these three remedies; for (2) and (3), *supra*, the evidence must show Defendant knew or had reason to know an item or service was not provided as claimed.

89.     Relator pleads for these additional remedies:

(1)     disgorgement by Defendants of all interests, earnings, monies, benefits, salaries, and profits obtained by Defendants from their Medicaid fraud scheme; and

(2)     imposition of a constructive trust on all funds or property that can be demonstrated to be proceeds made by Defendants through reimbursements obtained by their unlawful acts, as equitable property of The State of Indiana and Relator.

90.     Under Indiana Code 5-11-5.5-6(a)(1), Co-Relators are entitled to receive 15 to 25 percent of the proceeds of this action. Co-Relators are also entitled to receive from Defendants an amount for reasonable expenses, reasonable attorney's fees, and costs that the court finds to have been necessarily incurred. Ind. Code 5-11-5.5-6(a)(1).[24]

## COUNT SIX

---

[24] In addition, it is a criminal violation for a person to knowingly or intentionally: (1) file a Medicaid claim in violation of Ind. Code 12-15; (2) obtain payment from the Medicaid program by means of a false or misleading oral or written statement (or other fraudulent means); (3) acquire a provider number under the Medicaid program, except as authorized by law; (4) alter, with the intent to defraud, or falsify a provider's documents or records that are required to be kept under the Medicaid program; or (5) conceal information for the purpose of applying for or receiving unauthorized payments from the Medicaid program. Ind. Code 35-43-5-7.1. Such a violation is a class D felony or, if the fair market value of the offense is at least $100,000, a class D felony. *Id.* A provider convicted of Medicaid fraud is barred from participation in the Medicaid program for ten years. Ind. Code 12-15-22-1.5. Additional sanctions are outlined in Ind. Code 12-15-22-8.

**(Violations of the Massachusetts False Claims Act)**

91.     Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Additionally, Co-Relators state the course of conduct described in this Complaint was a nationwide practice of Kool Smiles, which conducts business in the State of Massachusetts.   Upon information and belief, Defendant's actions described herein occurred in Massachusetts well.

92.     At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the Massachusetts Medicaid Program regarding dental services they provided to Medicaid clients.

93.     Co-Relators bring this action against Kool Smiles for violations of the Massachusetts False Claims Act.   *See* Mass. Gen. Laws. Ann. 12 §5A-5O; *see* Mass. Gen. Laws. Ann. 12 §5C (allowing civil *qui tam* action by private person).   Specifically, Co-Relators allege Kool Smiles engaged in the following conduct:

(1)     knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval;

(2)     knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim;

(3)     conspired to commit a violation of this subsection;

(4)     knowingly presented, or causes to be presented, a claim that includes items or services resulting from a violation of section 1128B of the Social Security Act, 42 U.S.C. §1320a-7b, or section 41 of chapter 118E;

(5)     had possession, custody or control of property or money used, or to be used, by the commonwealth or a political subdivision thereof and knowingly delivers, or causes to be delivered, to the commonwealth or a political subdivision thereof less than all of that property or money;

(6)     was authorized to make or deliver a document certifying receipt of property used, or to be used, by the commonwealth or a political subdivision thereof and, with the intent of defrauding the commonwealth or a political subdivision thereof, made or delivered the receipt without completely knowing that the information on the receipt is true;

(7)     entered into an agreement, contract or understanding with an official of the commonwealth or a political subdivision thereof knowing the information contained therein is false;

(8)     knowingly made, used or caused to be made or used a false record or statement material to an obligation to pay or to transmit money or property to the commonwealth or a political subdivision thereof, or knowingly concealed or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the commonwealth or a political subdivision thereof; or

(9)     was a beneficiary of an inadvertent submission of a false claim to the commonwealth or a political subdivision thereof, or is a beneficiary of an overpayment from the commonwealth or a political subdivision thereof, and who subsequently discovered the falsity of the claim or the receipt of overpayment and failed to disclose the false claim or receipt of overpayment to the commonwealth or a political subdivision.

*See* Mass. Gen. Laws. Ann. 12 §5B(a)(1)-(10).

94.     Pursuant to the Massachusetts FCA, Defendants are liable for:

(1)     A civil penalty of not less than $5,500 or more than $11,000 per violation;

(2)     treble damages, including consequential damages, sustained by the state;

(3)     the costs of investigation and prosecution, including reasonable attorney fees and reasonable expert fees.

*Id.* at 12 §5B(a).

95.     Under the applicable state law, any corporation, partnership, or other person shall be held liable under this statute acts of its agent as long as the agent acted with apparent authority, regardless of whether the agent acted wholly or in part to benefit the principal, and regardless of whether the agent's conduct was ratified or adopted by the principal.  *Id.* at 12 §5B(c).

96.     Co-Relators and the State are unable, pending full discovery, to determine the total extent of the overpayments caused by Defendants' fraudulent conduct.   However, Co-Relators are

entitled to 15 to 25 percent of the proceeds of the action or settlement of these claims, based upon the extent of Co-Relators' substantial contribution to the prosecution of this action, as well as reasonable expenses, attorney fees, and costs, all of which are to be taxed against Kool Smiles. *Id.* at 12 §5F(c).

**COUNT SEVEN**
**(Violations of the New Mexico Medicaid False Claims Act,**
**the Medicaid Fraud Act, or the Fraud Against Taxpayers Act)**

97.      Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Additionally, Co-Relators state the course of conduct described in this Complaint was a nationwide practice of Kool Smiles, which conducts business in the State of New Mexico.  Upon information and belief, Defendant's actions described herein occurred in New Mexico as well.

98.      At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the New Mexico Medicaid Program regarding dental services they provided to Medicaid clients.

99.      Defendants committed unlawful acts, in violation of the New Mexico Medicaid False Claims Act by:

> (1)     presenting, or causing to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false or fraudulent; (N.M.S.A. §27-14-4(A));

> (2)     presenting, or causing to be presented, to the state a claim for payment under the Medicaid program knowing the person receiving a Medicaid benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program; (N.M.S.A. §27-14-4(B));

> (3)     making, using, or causing to be made or used, a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false; (N.M.S.A. §27-14-4(C));

(4)     conspiring to defraud the state by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent; (N.M.S.A. §27-14-4(D));

(5)     making, using, or causing to be made or used, a record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state, relative to the Medicaid program, knowing that such record or statement is false; (N.M.S.A. §27-14-4(E)); and/or

(6)     knowingly making a claim under the Medicaid program for a service or product that was not provided. (N.M.S.A. §27-14-4(H).

100.    Under the New Mexico Medicaid False Claims Act, Defendants are liable for three times the amount of damages the state sustained as a result of each act in violated of the subsections cited above. *See* N.M.S.A. §27-14-4. Defendants may also be liable for civil and criminal sanctions under the New Mexico Medicaid Fraud Act.[25]

---

[25] Defendants also engaged in unlawful conduct in violation of the New Mexico Medicaid Fraud Act. *See* N.M.S.A. §30-44-7 (describing the types of misconduct constituting "Medicaid fraud"). Examples of such conduct include:

(1) paying, soliciting, offering or receiving:

(a) a kickback or bribe in connection with the furnishing of treatment, services or goods for which payment is or may be made in whole or in part under the program,...
(b) a rebate of a fee or charge made to a provider for referring a recipient to a provider;

(2) providing with intent that a claim be relied upon for the expenditure of public money:

(a) treatment, services or goods that have not been ordered by a treating physician;
(b) treatment that is substantially inadequate when compared to generally recognized standards within the discipline or industry; or

(3) presenting or causing to be presented for allowance or payment with intent that a claim be relied upon for the expenditure of public money any false, fraudulent, excessive, multiple or incomplete claim for furnishing treatment, services or goods.

*See* N.M.S.A. §30-44-7(A). The penalties for violation of the New Mexico Medicaid Fraud Act include both criminal convictions (ranging from a petty misdemeanor to a second degree felony) and, when the misconduct is performed by an entity rather than an individual, fines (not more than $50,000 for each misdemeanor and not more than $250,000 for each felony). *Id.* §30-44-7(B),(C). In addition, the New Mexico Human Services Department may impose civil monetary penalties, up to and including (1) interest on the amount paid to the provider; (2) two times the amount of any excess payment to the provider; (3) $500 for each false or fraudulent claim submitted; and (4) payment of legal fees and costs of investigation and enforcement of legal remedies. *See* 2010 NEW MEXICO MEDICAID PROVIDER MANUAL, Ch. 8.351.2.11 (noting that the filing of a criminal action is not a condition precedent to the imposition of civil penalties).

101.    In addition or in the alternative to the allegations above, Defendants committed unlawful acts in violation of the New Mexico Fraud Against Taxpayers Act (FATA), N.M.S.A. §44-9-3, including:

(1)     knowingly presenting, or causing to be presented, to an employee, officer or agent of the state or to a contractor, grantee or other recipient of state funds a false or fraudulent claim for payment or approval;

(2)     knowingly making or using, or causing to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim;

(3)     conspiring to defraud the state by obtaining approval or payment on a false or fraudulent claim; and/or

(4)     as a beneficiary of an inadvertent submission of a false claim and having subsequently discovered the falsity of the claim, failing to disclose the false claim to the state within a reasonable time after discovery.

N.M.S.A. §44-9-3(A). Notably, the New Mexico FATA does not require proof of specific intent to defraud for a violation of any of the above provisions. *Id.* at §44-9-3(B).

102.    Under the New Mexico FATA, Kool Smiles is liable for: (1) three times the amount of damages sustained by the state because of the violation; (2) a civil penalty of not less than $5,000 and not more than $10,000 for each violation. *See* N.M.S.A. §44-9-3(C). Moreover, Kool Smiles is liable for the costs incurred to recover damages or penalties, as well as reasonable attorney fees, including the fees of the state attorney general or agency counsel.

103.    Kool Smiles' unlawful acts have cost the State of New Mexico many millions of dollars. Co-Relators and the State are unable, pending full discovery, to determine the total extent of the overpayments caused by Defendants' fraudulent conduct.

104.    Under either the New Mexico Medicaid False Claims Act or the Fraud Against Taxpayers Act, Relator is entitled to receive 15 to 30 percent of the proceeds of this action. *See*

N.M.S.A. §27-14-9(A),(B); §44-9-7(A),(B).

105.    Relator is also entitled to receive from Defendants an amount for reasonable expenses that the court finds to have been necessarily incurred, plus reasonable attorney fees and costs. N.M.S.A. §27-14-9(A),(B); §44-9-7(D).

**COUNT EIGHT**
**(Violations of Oklahoma Medicaid False Claims Act)**

106.    Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Additionally, Co-Relators state the course of conduct described in this Complaint was a nationwide practice of Kool Smiles, which conducts business in the State of Oklahoma.   Upon information and belief, Defendant's actions described herein occurred in Oklahoma as well.

107.    At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the Oklahoma Medicaid Program regarding dental services they provided to Medicaid clients.

108.    Co-Relators bring this action against Kool Smiles for violations of the Oklahoma Medicaid False Claims Act.   *See* 63 Okla. St. Ann. §5053, *et seq.*; *see, e.g.,* 63 Okla. St. Ann. §5053.2 (allowing a private person to bring a civil *qui tam* action for violations of the Act). Specifically, Co-Relators allege Kool Smiles engaged in the following activity in violation of the Oklahoma Medicaid False Claims Act:

(1)    knowingly presented, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

(2)    knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(3)    conspired to defraud the state by getting a false or fraudulent claim allowed or paid;

(4)   had possession, custody, or control of property or money used, or to be used, by the state and, intending to defraud the state or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5)   was authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, made or delivered the receipt without completely knowing that the information on the receipt is true; or

(6)   knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state.

*Id.* at §5053.1.B.  Notably, the Oklahoma statute does not require a specific intent to defraud for a Defendant to be liable.  *Id.* at §5053.1.A.1.

109.   Pursuant to Section 5053.1.B, Defendants are liable for a civil penalty of not less than $5,000 or more than $10,000 per violation, treble damages sustained by the state, and the costs of a civil action brought to recover any such penalties or damages.

110.   Co-Relators and the State are unable, pending full discovery, to determine the total extent of the overpayments caused by Defendants' fraudulent conduct.   However, Co-Relators are entitled to 15 to 25 percent of the proceeds of the action or settlement of these claims, based upon the extent of Co-Relators' substantial contribution to the prosecution of this action, as well as reasonable expenses, attorney fees, and costs, all of which are to be taxed against Kool Smiles.  *Id.* at §5053.4.

## COUNT NINE
### (Violations of Virginia Fraud Against Taxpayers Act)

111.   Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Co-Relators re-allege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.   Additionally, Co-Relators state the course of conduct described in this Complaint was a nationwide practice of Kool Smiles, which conducts business

in the State of Virginia. Upon information and belief, Defendant's actions described herein occurred in Virginia as well.

112. At various times in the past, and continuing through the present, Defendants knowingly or intentionally made false statements or misrepresentations to the Virginia Medicaid Program regarding dental services they provided to Medicaid clients.

113. Co-Relators bring this action against Kool Smiles for violations of the Virginia Fraud Against Taxpayers Act. *See* Va. Code Ann. §8.01-216.1 *et seq.*; *see also* Va. Code Ann. §8.01-216.5, 216.6, 216.7 (authorizing Co-Relators to bring a Virginia FATA claim as private persons). Specifically, Co-Relators allege Kool Smiles violated the Virginia FATA when it:

(1)   knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval;

(2)   knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim;

(3)   conspired to commit a violation of [the subsections of §8.01-216.3(A)];

(4)   had possession, custody, or control of property or money used, or to be used, by the Commonwealth and knowingly delivers, or causes to be delivered, less than all such money or property;

(5)   was authorized to make or deliver a document certifying receipt of property used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true; or

(6)   knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth or knowingly conceals or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Commonwealth.

*Id.* at Va. Code Ann. §8.01-216.3(A). The Virginia FATA defines "knowingly" as: (1) possessing actual knowledge; (2) acting with deliberate ignorance of the truth; or (3) acting with

reckless disregard to the truth.  *Id.* at §8.01-216.3(C).  Proof of specific intent to defraud is not necessary to support a claim under this statute.  *Id.*

114.   Pursuant to Section 8.01-216.3(B), Defendants are liable for:

    (1)    A civil penalty of not less than $5,500 or more than $11,000 per violation;

    (2)    treble damages sustained by the Commonwealth;

    (3)    the costs of investigation and prosecution, along with reasonable attorney fees.

*Id.* at §8.01-216.3(B).

115.   Co-Relators and the State are unable, pending full discovery, to determine the total extent of the overpayments caused by Defendants' fraudulent conduct.   However, Co-Relators are entitled to 15 to 25 percent of the proceeds of the action or settlement of these claims, based upon the extent of Co-Relators' substantial contribution to the prosecution of this action, as well as reasonable expenses, attorney fees, and costs, all of which are to be taxed against Kool Smiles. *Id.* at §8.01-216.7(A).

## VIII.
## CO-RELATORS' INTEREST

Co-Relators hereby assert a claim for the maximum share of the proceeds available to them under the applicable federal or state false claims acts referenced above.  In addition, to the extent permitted by each of the applicable federal or state laws, the Co-Relators also entitled to receive from Defendants an amount for reasonable expenses, reasonable attorney's fees, and costs that the court finds to have been necessarily incurred.

## IX.
## INDIVIDUAL CAUSES OF ACTION

### PLAINTIFF DR. LIN'S RETALIATION CLAIM AGAINST
### DEFENDANTS KS2 TX, PC D/B/A KOOL SMILES, and DENTISTRY OF
### BROWNSVILLE, PC D/B/A KOOL SMILES
### (Retaliation in violation of the Texas Medicaid Fraud Prevention Act)

116.    Dr. Lin realleges and incorporates the above allegations as if fully set forth herein.

117.    The Kool Smiles Defendants retaliated against Dr. Lin in violation of Section 36.115 of the Texas Human Resources Code because of lawful acts taken by Dr. Lin in furtherance of an action under Sections 36.001 *et seq.* of the Texas Human Resources Code.

118.    As a result of Defendants' actions, Dr. Lin has suffered and continues to suffer harm and damages.  Consequently, he is entitled to the following relief: back pay—doubled and with interest; compensatory damages (in amount to be determined by the jury); and attorney's fees and costs.  Tex. Human Res. Code §36.115(a).

119.    In addition, or alternatively, Dr. Lin alleges a *Sabine Pilot* wrongful termination cause of action against these Defendants.  In *Sabine Pilot Services v. Hauck*, 687 S.W.2d 733 (Tex. 1985), the Texas Supreme Court created a common-law cause of action against employers who discharge an at-will employee because the employee refused to perform an illegal act.

120.    The Kool Smiles Defendants employed Dr. Lin at-will.  During Dr. Lin's employment with Defendants, Defendants requested Dr. Lin perform illegal acts as a condition of keeping his job.  Some of these illegal acts included:  submitting false claims to the Texas Medicaid Program; performing unnecessary dental procedures on Medicaid beneficiaries, most of whom were minor children; falsifying medical records; and not reporting abuse committed by Defendants and their employees upon minor children, among other illegal acts.  Dr. Lin would have subjected himself to criminal sanctions had he agreed to perform the illegal acts requested by Defendants.  Defendants terminated Dr. Lin's employment because he refused to perform these illegal acts.

121.    Defendants' wrongful conduct resulted in injury to Plaintiff, which caused him to suffer actual damages (back and front pay) and mental anguish (past and future).

122.    Because Defendants acted with malice, Plaintiff is entitled to exemplary damages under

Section 41.003(a) of the Texas Civil Practice & Remedies Code because the defendants were

engaging in fraudulent actives, see above, and were in the act of committing the offenses listed

below.

     a.  **Texas Penal Code - §35A.02. Medicaid Fraud**:  The Texas Medicaid Fraud law
criminalizes fraudulent activities specifically involving Medicaid. Section 35A.02
outlines behavior that is outlawed.  The law criminalizes false statements, false
claims, and illegal remunerations relating to Medicaid benefits.  Additionally, the law
criminalizes conspiracy to defraud the state through Medicaid and obstruction of
investigations.

     b.  **Texas Penal Code - § 35.02. Insurance Fraud**:  Section 35.02 prohibits intending to
defraud or deceive an insurer by submitting false information in a claim for payment
or application for coverage.  The law also criminalizes receiving, soliciting, or
offering a benefit in connection with the furnishing of goods or services for which a
claim for payment is submitted under an insurance policy.

     c.  **False Statements Relating to Health Care Matters** – 18 U.S.C. §1035 (applies to
all private and public health care programs).

     d.  **Conspiracy to Defraud the United States -** 18 U.S.C. §371.

     e.  **Health Care Fraud -** 18 U.S.C. §1347 (applies to all private and public health care
programs) (amended by §10606 of the Affordable Care Act).

## <u>PLAINTIFF WINSTON'S RETALIATION CLAIM</u>
### (Retaliation in violation of the Virginia Fraud Against Taxpayers Act)

123.    Plaintiff Winston realleges and incorporates the above allegations as if fully set forth

herein.

124.    The Kool Smiles Defendants retaliated against Plaintiff Winston in violation of Va. Code

Ann. §8.01-216.8 because of lawful acts taken by Winston in furtherance of an action under the

Virginia FATA to "blow the whistle" on Kool Smiles' fraudulent scheme.  As explained above,

Plaintiff refused to participate in conduct that was fraudulent or constituted a willful

misrepresentation; e.g., entering incorrect codes that did not reflect the services provided for the

purpose of obtaining a greater Medicaid reimbursement.

125.    As a result of Defendants' actions, Plaintiff Winston has suffered and continues to suffer harm and damages.  Consequently, she is entitled to the following relief: (1) reinstatement with the same seniority she would have had but for the discrimination or wrongful termination; (2) two times the amount of back pay, with interest; (3) compensation for any special damages; and (4) litigation costs and reasonable attorney fees.  *See* Va. Code Ann. §8.01-216.8.

## X.
## DEMAND FOR JURY TRIAL

126.    Co-Relators hereby request trial by jury.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Co-Relators respectfully prays that upon a final hearing of the cause, judgment be entered against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court, together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate; penalties; costs of court; and such other and further relief to which the United States, the Affected States, and Co-Relators may be entitled at law or in equity.

For the United States, the Affected States, and
Relators

**WATERS & KRAUS, LLP**

By

Daniel Hargrove
Texas Bar No. 00790822
600 Navarro St., Floor 5
San Antonio, Texas  78205
(210) 349-0515
(210) 349-3666 (fax)
dhargrove@waterskraus.com

Charles Siegel
Texas Bar No. 18341875
3219 McKinney Avenue
Dallas, Texas 75204
(214) 357-6244
(214) 357-7252 (fax)
siegel@waterskraus.com

~ and ~

Jeffrey T. Embry
Hossley Embry
Texas Bar No.
209 Henry Street
Dallas, Texas  75226
(214) 265-1117
(214) 265-1958 (fax)
jeff@hossleyembry.com

R. Andrew Rodriguez
The Crosley Law Firm
Texas Bar No.
755 E. Mulberry Avenue, Ste. 250
San Antonio, Texas  78212
(210) 354-4500
(210) 244-2744 (fax)

Co-Counsel for Relators

## CERTIFICATE OF SERVICE

I hereby certify that on August **22**, 2013 a copy of the above and foregoing was served upon:

Mr. Robert Pitman
United States Attorney
United States Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, TX  78216

Mr. Eric Holder
United States Attorney General
United States Dept. of Justice
National Place Building
13331 Pennsylvania Ave., Room 950 North
Washington, DC  20004

Mr. Greg Abbott
The Texas Attorney General
Civil Medicaid Fraud Section
Attention: Ms. Susan Miller
P.O. Box 12548
Austin, Texas 78711-2548

Mr. George Jepsen
The Connecticut Attorney General
55 Elm Street
Hartford, CT  06106

Mr. Sam Olens
The Georgia Attorney General
40 Capitol Square SW
Atlanta, GA  30334

Mr. Greg Zoeller
The Indiana Attorney General
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN  46204

Ms. Martha Coakley
The Massachusetts Attorney General
1 Ashburton Place
Boston, MA  02108

Mr. Gary King
The New Mexico Attorney General
P.O. Drawer 1508
Santa Fe, NM  87504

Mr. Scott Pruitt
The Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK  73105

Mr. Ken Cuccinelli
The Virginia Attorney General
900 E. Main Street
Richmond, VA  23219

By: _____
     Daniel Hargrove
     Texas State Bar No. 00790822